UNITED STATES *v*. THE A. W. FENTON COMPANY, INC. (No. 5065)*

United States Court of Customs and Patent Appeals, Feb. 13, 1962

*William H. Orrick, Jr.*, Assistant Attorney General (*Richard E. FitzGibbon*, Chief, Customs Section, of counsel) for the United States.

*(C.A.D. 794)

**46**

*Barnes, Richardson & Colburn, Black, McCuskey, Souers & Arbaugh, (Joseph Schwartz* and *E. Robert Schellhase,* trial attorneys, of counsel), for appellee.

[Oral argument November 14, 1961, by Mr. FitzGibbon and Mr. Schwartz]

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

WORLEY, Chief Judge, delivered the opinion of the court:

This appeal is from the judgment of the United States Customs Court, Second Division, C.D. 2214, sustaining the importer's protest and holding the instant importations dutiable at 11½ per centum ad valorem under paragraph 353 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, as motors of more than 1/10 horsepower but less than 200 horsepower. The collector held the goods dutiable at 13¾ per centum ad valorem under said paragraph, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739, as articles having as an essential feature an electrical element or device.

Paragraph 353, as modified by the Torquay Protocol, T.D. 52739:

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

Other * * * _____ 13¾ ad val.

Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 of this Part (not including X-ray tubes or parts thereof)_____ The same rate of duty as the articles of which they are parts.

Paragraph 353, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108:

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

Motors:

Of more than 1/10 horsepower but less than 200 horsepower_____ 11½% ad val.

Other * * *

| * | * | * | * | * | * | * |
|---|---|---|---|---|---|---|

---

[1] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell,* pursuant to provisions of Section 294(d), Title 28, United States Code.

Parts, finished or unfinished, wholly or in chief value of metal, not specially provided for, of articles provided for in any item 353 in this Part:

Parts of motors_____ 11½¢ ad val.

 \* \* \* \* \* \* \*

Other_____ The same rate of duty as the articles of which they are parts.

The imported articles are invoiced as "Hoover Electric Motor and Gear Assemblies." A sample is in evidence. The testimony shows that the articles are made in a foreign plant of the Hoover Company, and are designed in accordance with specifications of the Hoover Company for use in Hoover electrical floor polishers. A floor polisher of the type embodying the article is also in evidence

The record shows that the article includes such components of an electric motor as an armature, field assembly, commutator, carbon brushes, and bearings, along with a two-piece frame which holds those parts together as a unit. Each end of the armature shaft is provided with a worm adapted to drive a worm gear. Such a gear, mounted on a drive shaft, is held in driven connection with each of the worms by the frame. The two drive shafts are disposed in spaced parallel relationship, perpendicular to armature shaft.

The Customs Court held that the article is "a motor which may be described as a gear motor or a special purpose motor." It further stated:

An electric gear motor is composed of a worm and rotating armature, drive shafts, gears, electric wire, field coil, bearings, carbon brushes attached to the rotating armature, and a 2-piece die casting frame.

A special-purpose motor differs from a general-purpose motor in that the latter is designed for a wide range of purposes and for general application without specific electrical or mechanical characteristics. Definitions of the special-purpose motors, general-purpose motors, and universal motors are set forth in exhibits 4 and 5.

A physical examination of exhibit 1 reveals a very compact, composite structure of closely integrated parts designed for economical use in domestic floor polishers. The frame of the motor also serves as a housing for other parts of the unit.

The Government contends that, because of the inclusion of "the two gear assemblies, together with the frame that constitutes a housing for the brushes of the polisher," the article constitutes "an entirety which is more than a mere motor." It cites decisions of this court, including *United States* v. *Agents for Kearfott Engineering Co.*, 21 CCPA 264, T.D. 46790, in support of the proposition that an item which is *more than* a certain article cannot fall within the *eo nomine* provision for that article.

In their briefs, both parties accept the following definitions of an "electric motor" in Webster's New International Dictionary, 2nd Edition, Unabridged:

motor * * *

Elec. A rotating machine which transforms electrical energy into mechanical energy. It consists of two principal parts: a field-magnet winding or a distributed-stator winding producing a magnet field, and a rotating armature or rotor in whose conductors flow currents which are acted upon by the magnetic field and cause rotation. * * *

That the instant article contains the essential elements of a motor there can be no doubt, but it is equally clear that it includes features not essential to its function as a motor.

Thus, the question is whether, regardless of those additional features, it remains only a motor, or whether those features remove it from that classification.

From the exhibits, it is apparent that the worm gear and drive shaft construction at each end of the armature shaft of the article does not function solely to reduce the speed of the motor output. The two drive shafts disposed perpendicularly to the armature shaft permit driving the two polishing brushes of the polisher in predetermined side by side relationship from the single motor. In addition to maintaining the essential parts of the motor in assembled relationship, the frame also supports the gearing assemblies and provides a projecting skirt which surrounds the upper portions of the polishing brushes in the assembled polisher. The frame of the import further includes a pair of spaced lugs, counterparts of which serve as attaching means for the handle of the polisher in evidence.

The witness Daiger, an official of the Hoover Company, testified as follows:

Q. After importation, is Exhibit 1 put into the floor polisher and ready for use in the exact condition in which it is imported?

A. No. There are more manufacturing operations on Exhibit 1.

Q. Will you describe those, please?

A. The out-put shafts are not ready to be adapted to the brushes. Parts have to be put on them to hold them together. A switch has to be assembled on it; a handle must be assembled on it; the attachment cord has to be connected to it; a decorative hood is put over it to protect the parts from being touched.

* * * * * * *

Judge Ford: Do you know of any of the articles in the field of appliances that do not have any special-built motors?

The Witness: Yes, yes. There would be appliances.

Judge Ford: Would you name some of those articles:

The Witness: Well, a floor polisher could be built with a definite—with a general purpose motor.

Judge Ford: Why isn't it?

The Witness: Because in our case, it is less costly to build to design the motors to fit our particular appliance.

Judge Ford: Why is it less costly? Does the motor burn out faster?

The Witness: No. You make the frame of the motor serve as the housing for the other parts of the unit. You make it so that it has a mounting for the switch whereas the general purpose wouldn't have those things on it.

It is clear from the evidence that the article is actually the principal component of the complete polisher. The polishing brushes are secured to the drive shafts of the unit and the remaining components of the polisher are, in the words of appellee's witness, "assembled on it," "connected to it" or "put over it." Thus, the features of the import govern the relationship in which the other components of the polisher must be assembled to provide a complete floor polisher.

It seems to us the Customs Court erred as a result of treating the features which the article includes, in addition to the essentials set out in the definition of an electric motor, as doing no more than transforming the article into a gear motor or special purpose motor. The article does include a motor. It also includes gears and it clearly is designed for a special purpose. But the additional features it includes do more than make it a special type of motor. They dedicate it to one particular use as a part of a floor polisher. Since it is more than a motor, it is not properly classifiable as a motor for tariff purposes. It seems to us that to hold otherwise would be to expand by degree the term "motor" to a point beyond the accepted definition of that term. It would be difficult to find a stopping point.

As noted by the Customs Court, a complete electrical floor polisher of the household type is classifiable as an article having as an essential feature an electrical element or device, under paragraph 353, as modified by T.D. 52739. *United States* v. *Electrolux Corporation*, 46 CCPA 143, C.A.D. 718.

Under the facts here we find ourselves in agreement with the Government that the instant article, being more than a motor, falls within the provisions of paragraph 353, as modified by T.D. 52739 and is consistent with *United States* v. *Electrolux Corporation*. Accordingly we are obliged to *reverse* the judgment appealed from.