**NIDEC CORPORATION,
Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–
Appellee.**

**No. 95–1010.**

United States Court of Appeals,
Federal Circuit.

Oct. 18, 1995.

James S. O'Kelly, Attorney, Barnes, Richardson and Colburn, New York City, argued for plaintiff-appellant. Of counsel, Frederic D. Van Arnam, Jr.

Frank W. Hunger, Assistant Attorney General, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C. Barbara M. Epstein, Attorney, argued for defendant-appellee. Of counsel, David M. Cohen, Director, Joseph I. Liebman, Attorney in charge. Also of counsel was Mark Nackman, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs Service.

Before MICHEL, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and SCHALL, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The question is whether the Customs Service properly classified the appellant Nidec Corporation's (Nidec) imported merchandise as electric motors rather than, as Nidec contends it should have done, as parts of electronic data processing machinery. The Court of International Trade upheld Customs' classification. We affirm.

## I.

Nidec's imports are electric rotary motors that include a precision spindle and other components. They are custom designed to be used to rotate the disks in computer hard disk drives in a particular company's computer. Although Nidec's products are referred to by various names, the Court of International Trade found that "[w]hatever the nomenclature, there are three elements, namely, a shaft centering a precision spindle, a stator, and a rotor, imported either separately or loosely connected." The purpose of the spindle is to ensure that the rotation of the computer disks is extremely precise. Precision in rotation is essential because any inaccuracies in speed, positioning, or stability may result in inaccurate storage or retrieval of information.

The United States Customs Service classified the merchandise as electric motors under heading 8501 of the Harmonized Tariff Schedule of the United States (HTSUS). Nidec timely challenged that determination by filing suit in the Court of International Trade. In its complaint, Nidec asserted that "[t]he imported merchandise consists of computer spindles for rigid disk drives" and should have been classified as "Parts and accessories ... suitable for use solely or principally with [automatic data processing] machines" under subheading 8473.30.40 of the 1989 HTSUS.

After trial, the Court of International Trade upheld Customs' classification. The court noted that Rule 1 of the HTSUS' General Rules of Interpretation "mandates that 'classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require,

according to the [remaining General Rules].'" The court stated that "if the goods are electric motors, even though designed specifically for use in computers, this Rule 1 and Note 2 above require the classification for which Customs opted." The court noted that Nidec had stipulated that "an 'electric motor' is 'a device for transforming electric energy into mechanical power, and includes rotary motors.'"

The court "concur[red]" with the government's position that the description of electric motors in the Explanatory Notes to heading 8501 "is 'sufficiently broad to encompass motors of many types,' including 'motors which are designed to be used in specific machines'" and that "the spindle can be equated with a pulley, gear, or flexible shaft in that it transmits the mechanical energy created by the rotor and the stator to the merchandise's intended load—the discs." It concluded that the "essence" of the function that the spindle performs "is still that of a motor, not of a spindle, the connector to the discs," and that Nidec's product "cannot be classified under the HTSUS as more than that which drives the hard discs in a computer."

## II.

A. The Harmonized Tariff Schedule of the United States supplanted the former Tariff Schedule of the United States in 1989. Omnibus Trade and Competiveness Act of 1988, Pub.L. No. 100–418, 102 Stat. 1107. Heading 8501 of the HTSUS covers:

Electric motors and generators (excluding generating sets).

Chapter 84 of the HTSUS, under which Nidec contends its product should have been classified, provides in pertinent part:

Heading 8473:

Parts and accessories ... suitable for use solely or principally with machines of heading 8469 to 8472:

Subheading 8473.30.40:

Parts and accessories of the machines of heading 8471: Not incorporating a cathode ray tube.

Heading 8471 covers "[a]utomatic data processing machines and units thereof; mag-

netic or optical readers, machines for transcribing data onto data media in coded form and machines for processing such data, not elsewhere specified or included."

■ Section 8501 is an *eo nomine* provision, *i.e.*, it describes a commodity by a specific name, usually one common in commerce. Absent limiting language or indicia of contrary legislative intent, such a provision covers all forms of the article. *See National Advanced Sys. v. United States*, 26 F.3d 1107, 1111 (Fed.Cir.1994). Heading 8501 covers "electric motors" and the applicable Subheading, 8501.10.60, covers "Motors of an output not exceeding 37.5W: Of 18.65 W or more but not exceeding 37.5 W." Nothing in the language or legislative history of HTSUS or this heading limits the scope of the provision.

■ Indeed, note 2(a) of Section XVI of the HTSUS shows that section 8501 covers all forms of electric motors and that an electric motor is properly classified as such even though it also could be classified as a part of another product. Note 2(a) states that "Parts which are goods included in any of the headings of chapters 84 and 85 [which would include heading 8501] ... are in all cases to be classified in their respective headings." The Explanatory Notes on this section further state that although "parts which are suitable for use solely or principally with particular machines ... are classified in the same heading as those machines," this rule does "not apply to parts which in themselves constitute an article covered by a heading of this Section ... [which] are in all cases classified in their own appropriate heading even if specifically designed to work as part of a specific machine. This applies in particular to ... [e]lectric motors of heading 8501." Although explanatory notes are not controlling authority, they are "generally indicative of the scope of the [HTSUS]." *Lynteq, Inc. v. United States*, 976 F.2d 693, 699 (Fed.Cir. 1992).

Explanatory Note 85.01 to Heading 8501 further illustrates the breadth of the electric motor provision. It states that:

(A) Rotary motors produce mechanical power in the form of rotary motion. They are of many types and sizes according to whether they operate on DC or AC, and according to the use or purpose for which they are designed. The motor housing may be adapted to the circumstances in which the motor will operate....

Many motors may incorporate a fan or other device for keeping the motor cool during running.

With the exception of starter motors for internal combustion engines (heading 8511), the heading covers electric motors of all types from low power motors for use in instruments, clocks, time switches, sewing machines, toys, etc., up to large powerful motors for rolling mills, etc.

Motors remain classified here even when they are equipped with pulleys, with gears or gear boxes, or with a flexible shaft for operating hand tools.

The heading includes "outboard motors", for the propulsion of boats, in the form of a unit comprising an electric motor, shaft, propeller and a rudder.

■ B. Judicial review of a Customs classification "generally entails a two-step process of (1) ascertaining the proper meaning of specific terms within the tariff provision and (2) determining whether the merchandise at issue comes within the description of such terms as properly construed. The first step is a question of law which we review *de novo* and the second is a question of fact which we review for clear error." *National Advanced Sys.*, 26 F.3d at 1109 (quoting *Marcel Watch Co. v. United States*, 11 F.3d 1054, 1056 (Fed.Cir.1993)).

■ The parties stipulated, the Court of International Trade held, and we agree, that an electric motor is a "device for transforming electric energy into mechanical power, and includes rotary motors."

■ The issue before us, therefore, is whether Nidec's product comes within this description, and therefore properly was classified as an electric motor. We agree with the Court of International Trade that the classification was correct.

As that court pointed out, despite the critical functions it performs in insuring proper

rotation of the disk drive, the spindle's "essence is still that of a motor, not of a spindle, the connector to the discs," and it "cannot be classified under the HTSUS as more than that which drives the hard discs in a computer." As the court stated, "the spindle can be equated with a pulley, gear, or flexible shaft in that it transmits the mechanical energy created by the rotor and the stator to the merchandise's intended load—the discs." The explanatory notes to the HTSUS state that merchandise is classified as a motor even if it includes such elements.

Nidec argues that because the principal function of its product is to provide and maintain precision of rotation and stability through the spindle and because the product includes a fan and circuits which have functions other than to convert electrical energy into mechanical force, it cannot be classified as an electric motor.

The trial testimony, however, repeatedly indicated that the principal function of the merchandise is to drive the disks. The unit performs this function in a way that meets the definition of an electric motor: the interaction of the stator and rotor converts electrical energy into mechanical energy, causing the shaft and spindle to revolve, which in turn causes the disks to rotate.

Indeed, as the Court of International Trade noted, Nidec's own sales literature describes its product as an electric motor and itself as a manufacturer of such motors. Its sales brochure states:

> Since its founding in July 1973, Nidec has grown to become a world leader in the design and manufacturing of state-of-the-art precision brushless DC electric motors....

> **Spindle Motors (Brushless DC)**

> Spindle motors are designed and manufactured for all sizes of Winchester disc drives: 14″, 9″, 8″, 5.25″, 3.5″ and smaller, as well as for all optical disc drives. The details of each specific application are closely reviewed with the customer to arrive at a spindle motor design which yields the desired performance and lends itself to volume production in our automated facilities.

The basic character of Nidec's product as an electric motor is not changed because it is custom designed and made for a particular computer company or because it includes the precision spindle. The Explanatory Notes state that merchandise classifiable as an electric motor is "in all cases classified" as such "even if specially designed to work as part of a specific machine." Moreover, as discussed above, an *eo nomine* provision such as this one covers all forms of the article unless Congress indicates to the contrary, *Hasbro Indus. v. United States*, 879 F.2d 838, 840, 7 Fed.Cir. (T) 110, 112 (1989), and Congress has not here so indicated.

C. Under the prior TSUS, a motor that was "more than a motor" because it contained additional components performing different functions, was not classified as a motor. *See, e.g., United States v. Acec Elec. Corp.*, 474 F.2d 1009 (CCPA 1973) (sewing machine motors equipped with clutches are "more than" motors); *Servo–Tek Prods. v. United States*, 416 F.2d 1398 (CCPA 1969) (motors equipped with gear boxes are "more than" motors); *United States v. A.W. Fenton*, 49 CCPA 45, 1962 WL 9340 (1962) (gears). Nidec contends that under those cases its product is "more than a motor" and therefore was improperly classified as a motor.

The extent, if any, to which the "more than a motor" doctrine continues under the HTSUS is undecided and unclear. As noted, under that doctrine the presence of clutches, gear boxes or pulleys was held to make a motor "more than a motor." The explanatory note to heading 8501 under the HTSUS states, however, that "Motors remain classified here even when they are equipped with pulleys, with gears or gear boxes, or with a flexible shaft for operating hand tools." Thus, the broad sweep of heading 8501 suggests a Congressional intent to overturn at least some prior applications of the "more than a motor" doctrine.

Assuming without deciding that the doctrine continues to have some application under the HTSUS, we agree with the Court of International Trade that "a broad *eo nomine* provision like that at bar still includes all forms of an article." "[E]ach case [involving

the 'more than' doctrine] must in the final analysis be determined on its own facts." *E. Green & Son (New York), Inc. v. United States*, 450 F.2d 1396, 1398 (CCPA 1971). For the reasons previously given, Nidec's product is not "more than a motor" and was properly classified under heading 8501 as an electric motor.

D. Finally, Nidec challenges as clearly erroneous three of the Court of International Trade's findings: (1) that the merchandise consists of "three elements, namely, a shaft centering a precision spindle, a stator and a rotor, imported either separately or loosely connected"; (2) that its merchandise "drives the hard discs in a computer"; and (3) that the "spindle's remarkable, precise rotation is engendered by the interaction of the rotor and the stator upon electrification." On review of the evidentiary support for those findings, we conclude that they are not clearly erroneous.

## CONCLUSION

The judgment of the Court of International Trade is

**AFFIRMED.**