**JVC COMPANY OF AMERICA, DIVISION OF US JVC CORPORATION, Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 00–1028.

United States Court of Appeals,
Federal Circuit.

DECIDED: Nov. 21, 2000.

Rehearing En Banc Denied
Feb. 13, 2001.

Jack D. Mlawski, Galvin & Mlawski, of New York, New York, argued for plaintiff-appellant.

Amy M. Rubin, Trial Attorney, International Trade Field Office, Civil Division, Commercial Litigation Branch, Civil Division, Department of Justice, of New York, New York, argued for defendant-appellee. With her on the brief were David W. Ogden, Assistant Attorney General; David M. Cohen, Director, of Washington, DC; and Joseph I. Liebman, Attorney in Charge, International Trade Field Office. Of counsel on the brief was Beth C. Brotman, Attorney, U.S. Customs Service, International Trade Litigation, of New York, New York.

Before LOURIE, RADER, and LINN, Circuit Judges.

LOURIE, Circuit Judge.

JVC Company of America ("JVC") appeals from the decision of the United States Court of International Trade denying JVC's motion for summary judgment and granting the government's cross-mo-

tion for summary judgment that United States Customs Service ("Customs") properly classified JVC's imported video camera recorders under subheading 8525.30.00 of the Harmonized Tariff Schedule of the United States, 19 U.S.C. § 1202 (1988) ("HTSUS"). *JVC Co. of Am., Div. of U.S. JVC Corp. v. United States,* 62 F.Supp.2d 1132 (1999). Because we conclude that the Court of International Trade did not err in determining that Customs correctly classified the merchandise at issue, we affirm.

## BACKGROUND

The imported goods at issue in this case are video camera recorders, otherwise known as camcorders, which were imported by JVC in 1992.[1] *JVC,* 62 F.Supp.2d at 1133. The parties agree that JVC's camcorders are "electrical machine[s] or apparatus possessing two independent functions generally used in conjunction with one another; a television camera and a video tape recorder." *Id.* Customs classified the camcorders under subheading 8525.30.00, under the broader heading of 8525 of the HTSUS, as "television cameras," dutiable at a rate of 4.2 *ad valorem. Id.* at 1134. Heading 8525 and subheading 8525.30.00 read as follows:

8525    Transmission apparatus for radiotelephony, radiotelegraphy, radiobroadcasting or television, whether or not incorporating reception apparatus or sound recording or reproducing apparatus; television cameras:

.    .    .    .    .

8525.30.00    Television cameras

HTSUS, heading 8525 (1992).

JVC timely protested Customs' classification and paid all of the liquidated duties that were due. *JVC,* 62 F.Supp.2d at 1134. JVC then challenged Customs' classification in the Court of International Trade, arguing that its camcorders should have been classified under subheading 8543.80.90. Heading 8543 and subhead-

ings 8543.80 and 8543.80.90 read as follows:

8543    Electrical machines and apparatus, having individual functions, not specified or included elsewhere in this chapter; parts thereof:

.    .    .    .    .

8543.80    Other machines and apparatus:

.    .    .    .    .

8543.80.90    Other

HTSUS, heading 8543. JVC alternatively argued that its camcorders should have been classified under subheading 8479.89.90. *JVC,* 62 F.Supp.2d at 1134. Heading 8479 and subheadings 8479.89 and 8479.89.90 read as follows:

8479    Machines and mechanical appliances having individual functions, not specified or included elsewhere in this chapter; parts thereof:

.    .    .    .    .

Other machines and mechanical appliances:

.    .    .    .    .

8479.89    Other:

.    .    .    .    .

8479.89.80    Other

HTSUS, heading 8479. Merchandise classified under subheadings 8543.80.90 and 8479.89.90 are dutiable at the respective rates of 3.9% and 3.7% *ad valorem. JVC,* 62 F.Supp.2d at 1134.

Both parties moved for summary judgment, arguing that there were no genuine issues of material fact in dispute. *Id.* at 1136. The Court of International Trade denied JVC's motion for summary judgment and granted the government's corresponding cross-motion, holding that Customs had correctly classified JVC's camcorders under subheading 8525.30.00 as "television cameras." *Id.* at 1139.

---

**1.** Accordingly, all references to the HTSUS    are to the 1992 edition.

The court concluded that JVC's camcorders were *prima facie* classifiable under heading 8525 as "television cameras." *Id.* at 1138. The court also concluded that this court's holding in *Sears Roebuck & Co. v. United States*, 22 F.3d 1082 (Fed. Cir.1994), was not dispositive in this case, as *Sears* was decided under the Tariff Schedules of the United States ("TSUS"), not the HTSUS. *JVC*, 62 F.Supp.2d at 1138. The court further concluded that JVC's proposed alternative headings were inappropriate because the merchandise at issue fell within the scope of heading 8525, which was more specific than either of the headings proposed by JVC. *Id.* at 1138–39.

JVC timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5) (1994).

## DISCUSSION

■ We review the Court of International Trade's grant of summary judgment for correctness as a matter of law, deciding *de novo* whether genuine issues of material fact existed and whether the moving party was entitled to judgment as a matter of law. *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1378 (Fed.Cir.1999). In reviewing a denial of a motion for summary judgment, "we give considerable deference to the trial court, and will not disturb the trial court's denial of summary judgment unless we find that the court has indeed abused its discretion." *Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1306, 54 U.S.P.Q.2d 1910, 1912 (Fed.Cir.2000). When both parties move for summary judgment, the court must evaluate each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *McKay v. United States*, 199 F.3d 1376, 1380 (Fed.Cir.1999).

■ Determining the meaning of a tariff term in the HTSUS is an issue of statutory interpretation and thus a question of law. *Nissho Iwai Am. Corp. v. United States*, 143 F.3d 1470, 1472 (Fed. Cir.1998). If an HTSUS provision is ambiguous and Customs issues a regulation that "fills a gap or defines a term in a way that is reasonable in light of the legislature's revealed design," Customs' interpretation is entitled to deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1994). *United States v. Haggar Apparel Co.*, 526 U.S. 380, 392, 119 S.Ct. 1392, 143 L.Ed.2d 480 (1999). However, in the absence of such a regulation, this court has held that *Chevron* deference does not extend to Customs' interpretation in an ordinary classification ruling. *Mead Corp. v. United States*, 185 F.3d 1304, 1306 (Fed.Cir. 1999), *cert. granted*, ___ U.S. ___, 120 S.Ct. 2193, 147 L.Ed.2d 231 (2000).[2] Determining whether a particular imported item falls within the scope of the various classifications, as properly construed, is a question of fact. *Carl Zeiss*, 195 F.3d at 1378. In this case, because the structure and use of the imported camcorders are not in dispute, and Customs has not promulgated any regulations interpreting the tariff terms at issue, our analysis of whether the imported merchandise has been properly classified turns on the determination of the proper meaning and scope of the relevant tariff classifications. *Id.*

■ JVC argues that the Court of International Trade erred in concluding that Customs properly classified the subject merchandise under subheading 8525.30.00. JVC argues that camcorders are not classifiable under heading 8525 because they do not fall within the common meaning of the term "television cameras." JVC asserts that a camcorder is by definition a

---

**2.** We are aware that the issue of deference to Customs' classification determinations is now before the U.S. Supreme Court. However, as will be seen *infra*, the question of deference to Customs does not play a role in our decision.

*combined* television camera and videocassette recorder. JVC further asserts that because camcorders have two co-equal and independent functions, a camcorder is "more than" a television camera, and therefore is not classifiable as one. JVC also argues that this court's previous determination of the common meaning of the term "television camera" in *Sears* is controlling because the relevant tariff terms under the TSUS and HTSUS are identical. Finally, JVC argues that, because camcorders are not *prima facie* classifiable under heading 8525 and are instead described under its proposed alternative headings, they should be classified under either subheading 8543.80.90 or 8479.89.90.

The government responds that the Court of International Trade correctly affirmed Customs' classification of JVC's camcorders under subheading 8525.30.00. The government asserts that camcorders fall within the common meaning of "television cameras," and that as an *eo nomine* provision, heading 8525 includes all forms of television cameras. The government also contends that the Explanatory Notes to heading 8525 provide additional support for the classification of camcorders under that heading. The government further asserts that *Sears* is not dispositive in this case, as that decision involved the interpretation of a tariff term under the TSUS, not the HTSUS. The government further contends that the "more than" doctrine does not apply to cases arising under the HTSUS, and has been subsumed into the General Rules of Interpretation ("GRIs"). Finally, the government asserts that, while camcorders may be described by subheadings 8543.80.90 and 8479.89.90, they should not be classified under these subheadings because heading 8525 is more specific.

▆▆▆▆ Applied in numerical order, the GRIs of the HTSUS and the Additional United States Rules of Interpretation govern the proper classification of merchandise entering the United States. *Carl Zeiss*, 195 F.3d at 1379. According to GRI 1, "classification shall be determined according to the terms of the headings and any relevant section or chapter notes." Thus, "a court first construes the language of the heading, and any section or chapter notes in question, to determine whether the product at issue is classifiable under the heading." *Baxter Healthcare Corp. of P.R. v. United States*, 182 F.3d 1333, 1337 (Fed.Cir.1999) (quoting *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1440 (Fed.Cir.1998)). Absent contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meaning. *Carl Zeiss*, 195 F.3d at 1379. A court may rely upon its own understanding of the terms used, lexicographic and scientific authorities, dictionaries, and other reliable information. *Id.*

▆▆▆▆ Under GRI 3(a), when goods are *prima facie* classifiable under two or more headings, the court should determine which heading is the most specific, comparing only the language of the headings and not the language of the subheadings. *Orlando Food*, 140 F.3d at 1440. Only after determining that a product is classifiable under a particular heading should the court look to the subheadings to find the proper classification. *Id.*

▆▆▆▆ As an initial matter, we agree with the government that the merchandise is *prima facie* classifiable under heading 8525. As an *eo nomine* provision, heading 8525 includes all forms of the named article, *i.e.*, "television cameras." *Carl Zeiss*, 195 F.3d at 1379. The Explanatory Notes to heading 8525 expressly state that "[t]his heading covers television cameras.... Cameras for underwater work and portable cameras with or without a built-in video recorder are also classified here." Explanatory Notes, § XVI, 85.25(C), at 1375 (1986). Although the Explanatory Notes are not legally binding or dispositive, they may be consulted for guidance and are generally indicative of the proper interpretation of the various HTSUS provisions. *E.g., Carl Zeiss*, 195 F.3d at 1378 n. 1 (citing H.R. Conf. Rep. No. 100–576, at 549

(1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582). In addition, according to the McGraw–Hill Encyclopedia of Science & Technology, "[a] television camera may fall within one of several categories: studio, *portable,* or telecine." 18 McGraw–Hill Encyclopedia of Sci. & Tech. 212 (8th ed.1997) (emphasis added). This reference further states that:

Television cameras intended for … portable use are usually one piece, with all elements of the camera system contained in one assembly. *Such cameras may be combined with a detachable or built-in videocassette recorder to form a camcorder* (Fig.2).

.    .    .    .    .

Portable cameras … usually combine all of the basic elements into one package and may be used for a multitude of purposes.… The units often have built-in microphones, videocassette recorders, and batteries for completely self-contained operation (Fig.2). These compact and lightweight camcorders can be easily handled by one person.

*Id.* at 212, 216 (emphasis added). While JVC argues that this authority distinguishes television cameras from camcorders, we agree with the government that this reference source supports the view that a camcorder is a type of television camera—one with a built-in videocassette recorder.

JVC further argues that camcorders are not classifiable as "television cameras" because they are combination articles having two co-equal and independent functions, *i.e.,* a television camera and a tape recorder, and are therefore "more than" a television camera. In support of its position, JVC cites *Digital Equipment Corp. v. United States,* 889 F.2d 267, 268 (Fed.Cir. 1989), and *Avenues in Leather, Inc. v. United States,* 178 F.3d 1241, 1246 (Fed. Cir.1999), for the proposition that "when goods constitute more than a particular article because they possess additional significant features or perform additional nonsubordinate functions, they are not

classifiable as that article." However, we agree with the government that the "more than" doctrine, having been supplanted by the GRIs, does not apply to cases arising under the HTSUS.

Whether the "more than" doctrine applies in cases involving the HTSUS is an issue of first impression. In *Digital Equipment,* this court held that the articles at issue, *viz.,* power supplies for computers, were improperly classified as "rectifiers or rectifying apparatus" because they had additional functions that were significantly different from the function of rectifying. *Digital Equip.,* 889 F.2d at 269. That case, however, involved tariff provisions under the TSUS, not the HTSUS. It is therefore not controlling on issues under the HTSUS. In *Avenues in Leather,* we in turn relied on the "more than" doctrine set forth in *Digital Equipment,* without considering whether that doctrine was applicable to cases arising under the HTSUS. *See Aves. in Leather,* 178 F.3d at 1246. Because neither of these cases cited by JVC explicitly addressed the question whether the "more than" doctrine should be applied in interpreting HTSUS provisions, they are not precedent concerning that issue. *See National Cable Television Ass'n v. Am. Cinema Editors,* 937 F.2d 1572, 1581 (Fed.Cir. 1991) ("When an issue is not argued or is ignored in a decision, such decision is not precedent to be followed in a subsequent case in which the issue arises." (citing *Webster v. Fall,* 266 U.S. 507, 511, 45 S.Ct. 148, 69 L.Ed. 411 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *UMC Elecs. Co. v. United States,* 816 F.2d 647, 654, 2 U.S.P.Q.2d 1465, 1470 (Fed.Cir.1987) (citing *NLRB v. Boeing Co.,* 412 U.S. 67, 72, 93 S.Ct. 1952, 36 L.Ed.2d 752 (1973), for the proposition that a premise only assumed in earlier cases may be rejected when the issue is "squarely presented" to the court), *cert. denied,* 484 U.S.

1025, 108 S.Ct. 748, 98 L.Ed.2d 761 (1988))).

In fact, previously, in *Nidec Corp. v. United States,* 68 F.3d 1333, 1337 (Fed.Cir. 1995), we specifically called into question the applicability of the "more than" doctrine in HTSUS cases. In *Nidec,* we stated: "The extent, if any, to which the 'more than ...' doctrine continues under the HTSUS is undecided and unclear." *Nidec,* 68 F.3d at 1337. We further stated:

> *Assuming without deciding that the doctrine continues to have some application under the HTSUS,* we agree with the Court of International Trade that a broad *eo nomine* provision like that at bar still includes all forms of an article. Each case involving the "more than" doctrine must in the final analysis be determined on its own facts.

*Id.* at 1337–38 (emphasis added) (internal quotation marks and citation omitted). We then concluded that the merchandise at issue, *i.e.,* electric rotary motors, was properly classified as "electric motors." We so concluded despite the existence of several prior decisions, rendered under the TSUS, in which various types of motors that contained additional components were determined to be "more than" a motor, and therefore not classifiable as one. *See id.* (citing *United States v. Acec Elec. Corp.,* 60 C.C.P.A. 113, 474 F.2d 1009 (1973); *Servo–Tek Prods. v. United States,* 57 C.C.P.A. 13, 416 F.2d 1398 (1969); *United States v. A.W. Fenton,* 49 C.C.P.A. 45 (1962)). Thus, the issue whether the "more than" doctrine continues to apply under the HTSUS has not been settled.

▇ The government argues that the judicially-created "more than" doctrine does not apply to cases arising under the HTSUS because it has been subsumed into the GRIs. We agree and hereby settle the issue for the benefit of future adjudication of classification cases. As the government notes, under the TSUS, judicially created classification principles were expressly sanctioned by General Interpretative Rule 10(a), which provided that:

> (a) [T]he ... provisions describing the classes of imported articles ... are subject to the rules of interpretation set forth herein and to such other rules of statutory interpretation, not inconsistent therewith, as have been or may be developed under administrative or judicial rulings.

However, under the HTSUS, there is no such provision that expressly refers to judicial rulings. In fact, the GRIs set out principles that govern classification issues without resort to judicially-developed doctrines such as the "more than" doctrine. The introduction to the GRIs states that "[c]lassification of goods in the tariff schedule shall be governed by the following principles." GRI 1 then states that "classification shall be determined according to the terms of the headings and any relevant section or chapter notes." GRI 2(b) provides that "[a]ny reference in a heading to a material or substance, shall be taken to include a reference to mixtures or combinations of that material or substance." GRI 3 provides that "[w]hen, by application of rule 2(b) or for any other reason, goods are, *prima facie,* classifiable under two or more headings," they must be classified under the heading that (1) is the most specific; (2) describes the component which gives the imported good its essential character; or (3) occurs last in numerical order. This statutorily-prescribed, comprehensive, and systematic method of classification set forth in the GRIs supplants the judicially-created "more than" doctrine and precludes its applicability to cases arising under the HTSUS. Whether other judicially-created doctrines are supplanted by the GRIs we do not attempt to decide. Any such questions must await future adjudication.

JVC next argues that this court's previous determination of the common meaning of the term "television camera" in *Sears* is dispositive. We disagree. Our decision in *Sears* is not controlling because it was a decision that was based on an interpretation of tariff provisions under the TSUS,

not the HTSUS. *See Mitsubishi Int'l Corp. v. United States,* 182 F.3d 884, 886 (Fed.Cir.1999) (stating that judgments interpreting provisions of the TSUS do not apply to classifications made under different language in the more recently enacted HTSUS). While prior TSUS cases may be instructive in interpreting identical language in the HTSUS, they are not dispositive. H.R. Conf. Rep. No. 100–576, at 549–50 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582–83. As explained in the House Conference Report accompanying the Omnibus Trade and Competitiveness Act of 1988, which enacted the HTSUS:

> In light of the significant number and nature of changes in nomenclature from the TSUS to the HTS[US], decisions by the Customs Service and the courts interpreting the nomenclature under the TSUS are not to be deemed dispositive in interpreting the HTS[US]. Nevertheless, on a case-by-case basis prior decisions should be considered instructive in interpreting the HTS[US], particularly where the nomenclature previously interpreted in those decisions remains unchanged and no dissimilar interpretation is required by the text of the HTS[US].

*Id.*

In relation to television cameras, the nomenclature at issue has been changed; the relevant tariff provisions under the TSUS and HTSUS are not identical. In *Sears,* this court rejected the importer's argument that the term "television cameras" should be limited to "only those cameras directly connected to or connectable to broadcast transmission apparatus for contemporaneous viewing at a distance." 22 F.3d at 1086. We concluded that camcorders having the co-equal and independent functions of a camera and a tape recorder are combination devices. *Id.* at 1088. We accordingly held that camcorders were properly classified under item 685.45 of TSUS, which specifically covered:

> Radiotelegraphic and radiotelephonic transmission apparatus; radiobroadcasting and television transmission and reception apparatus, and *television cameras;* record players, phonographs, *tape recorders,* dictation recording and transcribing machines, record changers, and tone arms; all of the foregoing, *and any combination thereof,* whether or not incorporating clocks or other timing apparatus, and parts thereof.

*Id.* at 1083 n. 1. In contrast, the HTSUS does not include a heading that provides for such a combination. *Cf.* HTSUS, heading 8525. Thus, while both the TSUS and HTSUS use the term "television cameras," the heading under the HTSUS is significantly different from that under the TSUS, as it lacks the competing combination provision which controlled the *Sears* decision. Consequently, our prior holding in *Sears* is not dispositive of this case. *Mitsubishi,* 182 F.3d at 886.

Having thus concluded that camcorders are *prima facie* classifiable under heading 8525 of the HTSUS, the only remaining issue is whether camcorders should nonetheless be classified under some alternative heading. JVC contends that its camcorders are described under headings 8543 and 8479, and therefore should be classified under either subheading 8543.80.90 or 8479.89.90. We disagree for the following reasons. First, as we noted earlier, the Explanatory Notes to heading 8525 explicitly state that "[t]his heading covers television cameras.... Cameras for underwater work and portable cameras with or without a built-in video recorder are also classified here." Explanatory Notes, Section XVI, 85.25(C), at 1375 (1986); *see also Carl Zeiss,* 195 F.3d at 1378 n. 1 (explaining that although the Explanatory Notes are not legally binding or dispositive, they may be consulted for guidance and are generally indicative of the proper interpretation of the various HTSUS provisions). Moreover, while heading 8543 ("Electrical machines and apparatus, having individual functions, not specified or included else-

where") and heading 8479 ("Machines and mechanical appliances having individual functions, not specified or included elsewhere") may arguably describe camcorders, they should not be classified under these headings because heading 8525 ("television cameras") is more specific. GRI 1, 3(a); *Orlando Food*, 140 F.3d at 1440 (explaining that when goods are *prima facie* classifiable under two or more headings, the court should determine which heading is most specific, comparing only the language of the headings and not the subheadings). We therefore conclude that JVC's camcorders were properly classified under subheading 8525.30.00 of the HTSUS.

## CONCLUSION

As ably expressed in the well-reasoned opinion of the Court of International Trade, the imported goods at issue are *prima facie* classifiable under heading 8525 of the HTSUS, and the alternative tariff subheadings proposed by JVC are inapplicable. Accordingly, the Court of International Trade did not err in concluding that Customs correctly classified the merchandise at issue under subheading 8525.30.00, and we therefore

*AFFIRM.*