Slip Op. 13-98

UNITED STATES COURT OF INTERNATIONAL TRADE

ALPINESTARS S.P.A.,

               Plaintiff,

   v.

UNITED STATES,

               Defendant.

Before: Leo M. Gordon, Judge

Court No. 09-00271

**OPINION**

[Summary judgment granted for Plaintiff; summary judgment denied for Defendant.]

Dated: August 02, 2013

Erik D. Smithweiss, Robert B. Silverman, Frances P. Hadfield, Robert F. Seely, Joseph M. Spraragen, and Heather Litman for Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt of New York, NY and Los Angeles, CA on behalf of Plaintiff Alpinestars S.p.A.

Jason M. Kenner, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice for Defendant United States. With him on the brief were Stuart F. Delery, Principal Acting Assistant Attorney General, Barbara S. Williams, Attorney in Charge. Of counsel on the brief was Michael W. Heydrich, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection of Washington, DC.

Gordon, Judge: This case is before the court on cross-motions for summary judgment. See Def.'s Mot. for Summ. J., ECF No. 50 ("Def.'s Br."); Pl.'s Cross-Mot. for Summ. J., ECF No. 57 ("Pl.'s Br."). Plaintiff Alpinestars S.p.A. ("Alpinestars") challenges the decision of Defendant U.S. Customs and Border Protection ("Customs") denying Alpinestars' Protest of Customs' classification of the imported Tech 8 motocross boot within the Harmonized Tariff Schedule of the United States ("HTSUS"). Customs classified the merchandise as "Other footwear with outer soles and uppers of

rubber or plastics: Other footwear: Covering the ankle: Other: Other: Other: Valued over $12/pair" under subheading 6402.91.90, HTSUS, which carries a 20% duty rate. Plaintiff claims that the merchandise is properly classified as "Articles and equipment for general physical exercise, gymnastics, athletics, other sports (including table-tennis) or outdoor games, not specified or included elsewhere in this chapter; swimming pools and wading pools; parts and accessories thereof: Other: Other: Other" under subheading 9506.99.60 of the HTSUS, which carries a 4% duty rate. Alternatively, Plaintiff argues that the subject merchandise is classifiable as "Footwear with outer soles of rubber, plastics, leather or composition leather and uppers of leather: Other footwear: Covering the ankle: For men, youths and boys" under HTSUS subheading 6403.91.60 with a 8.5% duty rate, or as "Other footwear with outer soles and suppers of rubber or plastics: Sports footwear: Other: Other: Valued over $12/pair," under subheading 6402.19.90, HTSUS, dutiable at 9%. The court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (2006).[1] For the reasons set forth below, Plaintiff's motion for summary judgment is granted, and Defendant's motion is denied.

## I. Undisputed Facts

The following facts are not in dispute. See Def.'s Statement Undisp. Mat. Facts, ECF No. 50 ("Def.'s Undisp. Facts"); Pl.'s Resp. to Def.'s Statement Undisp. Mat. Facts, ECF No. 62 ("Pl.'s Resp. to Def.'s Undisp. Facts "); Pl.'s Statement Add'l Undisp. Facts, ECF No. 59 ("Pl.'s Add'l Undisp. Facts"); Def.'s Resp. to Pl.'s Statement of Add'l Undisp. Facts, ECF No. 68 ("Def.'s Resp. to Pl.'s Undisp. Facts"). Alpinestars is a world

---

[1] Further citation to Title 28 of the U.S. Code is to the 2006 edition.

renowned manufacturer of technical, high performance protective gear for motorcycle and auto racing.  Pl.'s Add'l Undisp. Facts ¶ 1; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 1. This case concerns the classification Alpinestars' Tech 8 motocross boots, Model No. 201106 ("Tech 8"), imported by Plaintiff in June 2008 under Entry Number GEO-4000478-6.  Def.'s Undisp. Facts. ¶ 1; Pl.'s Resp. to Def.'s Undisp. Facts ¶ 1.  Customs classified the motocross boots at issue under HTSUS 6402.91.90, which provides for "Other footwear with outer soles and uppers of rubber or plastics: Other footwear: Covering the ankle: Other: Other: Other: Valued over $12/pair" dutiable at 20% ad valorem and liquidated the entries in September 2008.  Def.'s Undisp. Facts ¶ 2; Pl.'s Resp. to Def.'s Undisp Facts ¶ 2.

The Tech 8 is designed for motocross sports.  Pl.'s Add'l Undisp. Facts ¶ 51; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 51.  Traditional motocross is a motorcycle race on a closed dirt course of approximately two miles.  The dirt course incorporates jumps, ruts, and hairpin turns.  Other forms of off-road motorcycle sports include supercross, freestyle, endure, cross-country, adventure, and recreation off-road racing.  Pl.'s Add'l Undisp. Facts ¶ 3; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 3.  Motocross sports are dangerous and riders who participate in the sport either competitively or as a hobby must protect their bodies from injuries that may be caused by collisions with other riders, flying objects such as rocks and debris, and falls from the motorcycle.  Pl.'s Add'l Undisp. Facts ¶ 4; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 4.  A rider primarily controls the motorcycle with his hands and feet.  Pl.'s Add'l Undisp. Facts ¶ 13; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 13.  The connection between a rider's feet and the motorcycle footpegs

is crucial to the rider's performance in motocross sports. Pl.'s Add'l Undisp. Facts ¶ 60; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 60. The Tech 8 is necessary, useful, or appropriate for participating in motocross sports. Pl.'s Add'l Undisp. Facts ¶ 53; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 53. The boot is a high level motocross boot and is designed to provide protection to riders in motocross sports. Def.'s Undisp. Facts ¶ 6; Pl.'s Resp. to Def.'s Undisp. Facts ¶.6; Pl.'s Add'l Undisp. Facts ¶ 52; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 52. The Tech 8 is designed to protect riders from serious injuries caused by collisions, flying objects, and debris. Pl.'s Add'l Undisp. Facts ¶ 54; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 54.

When it was in production, the Tech 8 was the second most protective Alpinestars' boot on the market. Def.'s Undisp. Facts. ¶ 8; Pl.'s Resp. to Def.'s Undisp. Facts ¶ 8. The Tech 8 sold for approximately $350.00. Def.'s Undisp. Facts ¶ 9; Pl.'s Resp. to Def.'s Undisp Facts ¶ 9. Each boot weighs over four pounds. Pl.'s Add'l Undisp. Facts ¶ 5; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 5. The Tech 8 consists of an interior bootie and an external shell that are designed to work together to protect the foot and lower leg of a motocross rider. Pl.'s Add'l Undisp. Facts ¶ 6; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 6. The ankle area of the Tech 8 bootie has thick padding and incorporates gel inserts for additional impact protection. Pl.'s Add'l Undisp. Facts ¶ 7; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 7.

The Tech 8 external shell incorporates a heavy durable sole, a hard plastic protective shin guard, and padding to further protect a rider against injury from blows, collisions, and flying objects. Pl.'s Add'l Undisp. Facts ¶ 8; Def.'s Resp. to Pl.'s Undisp.

Facts ¶ 8.  A hard plastic ankle protector or "ankle brace" is sandwiched between the lining and the outer surface of the upper in the area of the ankle and heel. The ankle protector is stitched to the insole last.  Pl.'s Add'l Undisp. Facts ¶ 9; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 9.  The ankle protector provides protection and support for the wearer's ankle and heel bone.  Pl.'s Add'l Undisp. Facts ¶ 10; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 10.

The "shin plate" is an essential structural component of the upper.  Pl.'s Add'l Undisp. Facts ¶ 21; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 21.  The "shin plate" is a large hard plastic piece at the front of the shaft that is contoured to protect the shin of the wearer.  Pl.'s Add'l Undisp. Facts ¶ 19; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 19. The material underneath the shin plate is a thin textile lining and padded foam, which are not suitable materials for the external surface area of the upper.  Pl.'s Add'l Undisp. Facts ¶ 20; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 20.  The leather on the medial side of the shaft is reinforced with a "heat shield" fabricated from polyethylene that is 2.5 mm thick and coated with 70 microns of aluminum.  Pl.'s Add'l Undisp. Facts ¶ 17; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 17.  The heat shield is sandwiched between the leather and the lining, and is designed to protect the rider's calf from the heat of the motorcycle engine. Pl.'s Add'l Undisp. Facts ¶ 18; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 20.

The PX Protector (Part No. 53) is also an essential structural component of the upper of the Tech 8.  Pl.'s Add'l Undisp. Facts ¶ 11, Def.'s Resp. to Pl.'s Undisp. Facts ¶ 11.  The material underneath the PX Protector is a non-woven fibrous material that is

not suitable material for the external surface of the upper.  Pl.'s Add'l Undisp. Facts ¶ 12; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 12.

The upper of the Tech 8 does not contain any eyelet stays, ankle patches, tabs, or edging.  Def.'s Undisp. Facts ¶ 16; Pl.'s Resp. to Def.'s Undisp. Facts ¶16.  The external surface of the lower front and lateral side of the Tech 8 incorporates leather that is between 3.2 and 3.4 mm thick.  Pl.'s Add'l Undisp. Facts ¶ 13; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 13.  This leather is internally reinforced at the ankle and heel area with a layer of material called "flexon" that protects the ankle/heel area from impacts. Id.  The external surface of the shaft portion of the Tech 8 incorporates leather that is between 2.8 and 3.4 mm thick.  Pl.'s Add'l Undisp. Facts ¶ 14; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 14.

The Tech 8 employs a system of floating buckles for fastening.  Pl.'s Add'l Undisp. Facts ¶ 22; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 22.  The Tech 8 has four straps with four buckles and two floating buckle bases.  Def.'s Undisp. Facts ¶ 15; Pl.'s Resp. to Def.'s Undisp. Facts ¶ 15; Pl.'s Add'l Undisp. Facts ¶ 22; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 22.  The exterior shell of the Tech 8 has a Velcro® closure at the top of the shaft, which helps keep the Tech 8 closed, even without the buckles.  Pl.'s Add'l Undisp. Facts ¶ 23; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 23.

The "Listino" (Part No. 41), also called a "calf support" or "calf protector," is made of high modulus polyurethane ("PU") plastic and is stitched to the leather upper in the calf area.  Pl.'s Add'l Undisp. Facts ¶ 24; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 24; Def.'s Undisp. Facts ¶ 17; Pl.'s Resp. to Def.'s Undisp. Facts ¶ 17.  The intended functions of

the "Listino" are (1) to securely attach a floating buckle base and a buckle receiver as part of the floating buckle system, (2) to provide a location to place the vertical Alpinestars' logo, and (3) to cover and reinforce the rear zigzag seam on the shaft. Pl.'s Add'l Undisp. Facts ¶ 25; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 25. The "Listino" protects the vertical zigzag seam from damage. Pl.'s Add'l Undisp. Facts ¶ 26; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 26. The "Listino" may provide some protection from abrasion and impact due to the fact it is made from high modulus plastic and is placed over the leather upper. Pl.'s Add'l Undisp. Facts ¶ 28; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 28. Alpinestars' marketing material describes the calf support component as a "contoured calf protector plate [which] is injected with PU for high impact resistance." Def.'s Undisp. Facts ¶ 17; Pl.'s Resp. to Def.'s Undisp. Facts ¶ 17.

The buckle receiver holder (Part No. 48) component of the Tech 8 is composed of high modulus PU plastic and is affixed to the leather by stitching. Def.'s Undisp. Facts ¶ 10; Pl.'s Resp. to Def.'s Undisp. Facts ¶ 10. The rear buckle holder (Part No. 46) component is composed of high modulus PU plastic and is affixed to the leather by stitching. Def.'s Undisp. Facts ¶ 10; Pl.'s Resp. to Def.'s Undisp. Facts ¶ 10. The intended function of the buckle receiver holder is to accommodate an adjustable buckle strap as part of the floating buckle system so that the strap does not penetrate the inside of the leather upper. Pl.'s Add'l Undisp. Facts ¶ 35; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 35.

The butterfly-shaped heel counter (Part No. 58) is made of high modulus PU plastic and is stitched to the leather. Def.'s Undisp. Facts ¶ 12; Pl.'s Resp. to Def.'s

Undisp. Facts ¶ 12.  The stamped steel heel guard is composed of steel and is called the "iron heel."  Def.'s Undisp. Facts ¶ 14; Pl.'s Resp. to Def.'s Undisp. Facts ¶ 14.  The "iron heel" (Part No. 68) is made from steel and is screwed to the leather upper by two screws.  Pl.'s Add'l Undisp. Facts ¶ 40; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 37; Def.'s Undisp. Facts ¶ 14; Pl.'s Resp. to Def.'s Undisp. Facts ¶ 14.

The sole of the Tech 8 protects the rider's foot.  Pl.'s Add'l Undisp. Facts ¶ 45; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 45.  The sole is comprised of three separate layers (1) a plastic insole that is 10 mm thick and includes an embedded steel shank, (2) a 5 mm thick rubber midsole, and (3) an outer sole made of rubber that incorporates a hard replaceable sole that covers the middle portion of the bottom of the foot.  Pl.'s Add'l Undisp. Facts ¶ 46; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 46.  A stitchdown process is used to last the multi-layered sole to exterior boot upper.  Pl.'s Add'l Undisp. Facts ¶ 47; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 47.  The multilayered upper, including internal ankle brace, is stitched horizontally to the rib of the insole last.  Pl.'s Add'l Undisp. Facts ¶ 48; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 48.

The metal "toe-box" ("steel toe cap") is a replaceable component on the front of the sole of the boot.  Def.'s Undisp. Facts ¶ 27; Pl.'s Resp. to Def.'s Undisp. Facts ¶ 27. The replaceable steel toe cap is affixed to the juncture of the outsole and the upper of the Tech 8.  Pl.'s Add'l Undisp. Facts ¶ 49; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 49.  The steel toe cap wraps around and slightly protrudes from the outsole of the Tech 8, where it is attached with two screws.  Id.  The flat metal surface of the steel toe cap that faces the ground is smooth.  Id.  The steel toe cap helps the Tech 8 to better slide if a rider

places his foot down while riding.  Pl.'s Add'l Undisp. Facts ¶ 66; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 66.

The hard replaceable sole is a rubber portion of the sole of the boot.  Def.'s Undisp. Facts ¶ 26; Pl.'s Resp. to Def.'s Undisp. Facts ¶ 26.  It is composed of a hard rubber compound that is harder than the remainder of the sole of the boot.  Def.'s Undisp. Facts ¶ 26; Pl.'s Resp. to Def.'s Undisp. Facts ¶ 26.  A tight grip on the footpegs makes the rider's foot less likely to slip off the footpegs, and the rider has a more secure command of the motorcycle.  Pl.'s Add'l Undisp. Facts ¶ 61; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 61.  The hard replaceable sole covers the middle of the Tech 8 outsole, the portion of the outsole that rests on the footpeg.  Pl.'s Add'l Undisp. Facts ¶ 63, Def.'s Resp. to Pl.'s Undisp. Facts ¶ 63.

The buckle receiver holder covers 3.7% of the surface area of the upper of the Tech 8 boot.  Def.'s Undisp. Facts ¶ 29; Pl.'s Resp. to Def.'s Undisp. Facts ¶ 29.   The rear buckle holder covers 4.7% of the surface area of the upper of the Tech 8 boot. Def.'s Undisp. Facts ¶ 30; Pl.'s Resp. to Def.'s Undisp. Facts ¶ 30.  The stamped steel heel guard covers 0.9% of the surface area of the upper of the Tech 8 boot.  Def.'s Undisp. Facts ¶ 31; Pl.'s Resp. to Def.'s Undisp. Facts ¶ 31.  The butterfly-shaped heel counter covers 0.9% of the surface area of the upper of the Tech 8 boot.  Def.'s Undisp. Facts ¶ 32; Pl.'s Resp. to Def.'s Undisp. Facts ¶ 32.  The calf support covers 12.0% of the surface area of the upper of the Tech 8 boot.  Def.'s Undisp. Facts ¶ 33; Pl.'s Resp. to Def.'s Undisp. Facts ¶ 33.  The uncontested rubber/plastic of the surface area of the

upper of the Tech 8 boot is 43.5%.  Def.'s Undisp. Facts ¶ 34; Pl.'s Resp. to Def.'s Undisp. Facts ¶ 34.

## II. Standard of Review

The court reviews Customs' protest decisions de novo.  28 U.S.C. § 2640(a)(1). USCIT Rule 56 permits summary judgment when "there is no genuine issue as to any material fact . . . ."  USCIT R. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  In considering whether material facts are in dispute, the evidence must be considered in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Anderson, 477 U.S. at 261 n.2.

A classification decision involves two steps.  The first step addresses the proper meaning of the relevant tariff provisions, which is a question of law.  See Faus Group, Inc. v. United States, 581 F.3d 1369, 1371-72 (Fed. Cir. 2009) (citing Orlando Food Corp. v. United States, 140 F.3d 1437, 1439 (Fed. Cir. 1998)).  The second step involves determining whether the merchandise at issue falls within a particular tariff provision as construed, which, when disputed, is a question of fact.  Id.

When there is no factual dispute regarding the merchandise, the resolution of the classification issue turns on the first step, determining the proper meaning and scope of the relevant tariff provisions.  See Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1378 (Fed. Cir. 1999); Bausch & Lomb, Inc. v. United States, 148 F.3d 1363, 1365-66 (Fed. Cir. 1998).  This is such a case, and summary judgment is appropriate.  See Bausch & Lomb, 148 F.3d at 1365-66.

While the court accords deference to Customs classification rulings relative to their "power to persuade," United States v. Mead Corp., 533 U.S. 218, 235 (2001) (citing Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)), the court has "an independent responsibility to decide the legal issue of the proper meaning and scope of HTSUS terms." Warner-Lambert Co. v. United States, 407 F.3d 1207, 1209 (Fed. Cir. 2005) (citing Rocknel Fastener, Inc. v. United States, 267 F.3d 1354, 1358 (Fed. Cir. 2001)).

### III. Discussion

Classification disputes under the HTSUS are resolved by reference to the General Rules of Interpretation ("GRIs") and the Additional U.S. Rules of Interpretation. See Carl Zeiss, 195 F.3d at 1379. The GRIs are applied in numerical order. Id. Interpretation of the HTSUS begins with the language of the tariff headings, subheadings, their section and chapter notes, and may also be aided by the Explanatory Notes published by the World Customs Organization. Id. "GRI 1 is paramount . . . The HTSUS is designed so that most classification questions can be answered by GRI 1 . . . ." Telebrands Corp. v. United States, 36 CIT ___, ___, 865 F. Supp. 2d 1277, 1280 (2012).

Pursuant to GRI 1, merchandise that is described "in whole by a single classification heading or subheading" is classifiable under that heading. CamelBak Prods. LLC v. United States, 649 F.3d 1361, 1364 (Fed. Cir. 2011). If that single classification applies, the succeeding GRIs are inoperative. Mita Copystar Am. v. United States, 160 F.3d 710, 712 (Fed. Cir. 1998). Here, GRI 1 resolves the

classification of Alpinestars' Tech 8 motocross boot, and the court does not reach Alpinestars' other arguments under subsequent GRIs.  See Pl.'s Br. at 15-18.

The court construes tariff terms according to their common and commercial meanings, and may rely on both its own understanding of the term as well as upon lexicographic and scientific authorities.  See Len-Ron Mfg. Co. v. United States, 334 F.3d 1304, 1309 (Fed. Cir. 2003).  The court may also refer to the Explanatory Notes "accompanying a tariff subheading, which—although not controlling—provide interpretive guidance."  E.T. Horn Co. v. United States, 367 F.3d 1326, 1329 (Fed. Cir. 2004) (citing Len-Ron, 334 F.3d at 1309).

The dispute in this case concerns whether Alpinestars' Tech 8 boots are properly classified under headings, 6402, 6403, or 9506, HTSUS.  The pertinent provisions of Chapter 64 and 95 of the HTSUS are as follows:

```
6402  Other footwear with outer soles and uppers of rubber or plastics:
         Sports footwear:
               Other:
                     Other:
6402.19.90                 Valued over $12/pair…………………………9%
. . .
         Other footwear:
6402.91      Covering the ankle:
               Other:
                     Other:
                           Other:
6402.91.90                       Valued over $12/pair………20%
                                 * * *
6403  Footwear with outer soles of rubber, plastics, leather or composition
         leather and uppers of leather:
         Sports footwear:
6403.19      Other:
               For men, youths and boys:
                     Other:
6403.19.40                   Other……………………………..4.3%
```

    Other footwear:
6403.91        Covering the ankle:
                    Other:
                         Other:
**6403.91.60**                         For men, youths and boys………..8.5%
                              * * *
9506  Articles and equipment for general physical exercise, gymnastics,
       athletics, other sports (including table-tennis) or outdoor games, not
       specified or included elsewhere in this chapter; swimming pools
       and wading pools; parts and accessories thereof:
       Other:
9506.99     Other:
**9506.99.60**            Other…………………………………………………..4%

HTSUS subheadings 6402.19.90, 6402.91.90, 6403.19.40, 6403.91.60, 9506.99.60.

The subheadings are eo nomine provisions, or more simply, provisions "that describe[ ]

an article by a specific name, not by use." Aromont USA, Inc. v. United States, 671

F.3d 1310, 1312 (Fed. Cir. 2012) (citing CamelBak Prods., 649 F.3d at 1364). Absent

limiting language or contrary legislative intent, an eo nomine provision covers all forms

of the named article. Nidec Corp. v. United States, 68 F.3d 1333, 1336 (Fed. Cir. 1995).

Plaintiff argues that the Tech 8 boots are classifiable under Chapter 95, HTSUS

subheading 9506.99.60 "Articles and equipment for general physical exercise,

gymnastics, athletics, other  sports (including table-tennis) or outdoor games, not

specified or included elsewhere in this chapter; swimming pools and wading pools; parts

and accessories thereof: Other: Other: Other." Pl.'s Br. at 6. In the alternative, Plaintiff

argues the proper classification for the boot is under Chapter 64 as footwear with

uppers of leather, either under 6403.19.40 as "sports footwear" or under "other footwear"

of 6403.91.60, HTSUS. Id. Last, if the upper is rubber or plastic, Plaintiff argues the

Tech 8 is classifiable as "sports footwear" under subheading 6402.19.90, HTSUS. Id.

Customs, however, contends that the Tech 8 was properly classified under subheading 6402.91.90, HTSUS, for other footwear with uppers of rubber or plastic.

The initial question for the court is whether the Tech 8 is classifiable under Chapter 64 footwear or Chapter 95 sports equipment. If the Tech 8 is footwear and thus classifiable under Chapter 64, the court then must determine whether the upper is leather and classifiable under Heading 6403, or plastic or rubber and classifiable under Heading 6402. To determine the material of the upper, the court must identify, and exclude, all components that are accessories or reinforcements. If, after excluding accessories or reinforcements, the court concludes that the upper is leather, then the court must determine whether the Tech 8 is "Sports footwear" under 6403.19.40 or "Other footwear" under 6403.91.60. Here, the court concludes that the Tech 8 is footwear (not sports equipment), that the material of the upper is leather, and that it does not satisfy the requirements of "Sports footwear." Accordingly, the Tech 8 is classifiable as "Other footwear" under 6403.91.60, HTSUS.

## A. Chapter 95

Plaintiff argues the proper classification for the Tech 8 is under HTSUS Chapter 95, Heading 9506, as sports equipment. Alpinestars contends that, because "the Tech 8 is protective and . . . necessary, useful, or appropriate sports equipment of motocross and other offroading riding sports," it is sports equipment and is classifiable under Heading 9506. Pl.'s Br. at 13. Further, Plaintiff contends the Tech 8 is similar to the items listed in Example 13 of the Chapter 95 Explanatory Notes. Id. at 11. Defendant counters arguing that the Tech 8 is footwear—not sports equipment—and was properly

classified under Chapter 64 as footwear.  Def. Br. at 27.  Further, Defendant cites to

Note 1(g) of Chapter 95, which excludes sports footwear from the Chapter.  Id. at 35;

Chapter 95 Notes, Note 1(g), HTSUS.

Heading 9506 provides for "Articles and equipment for . . . sports," which is

referred to as "sports equipment."  The HTSUS does not define the term "sports

equipment."  However, the Federal Circuit has defined sports equipment within Heading

9506.  In Bauer Nike Hockey USA, Inc. v. United States, 393 F.3d 1246, 1250-51 (Fed.

Cir. 2004), the Federal Circuit defined the term as articles that are "necessary, useful or

appropriate" for that sport.  The Federal Circuit further refined its definition of sports

equipment in LeMans Corp. v. United States, 660 F.3d 1311 (Fed. Cir. 2011).  In

LeMans, a case involving the classification of motocross jerseys, pants, and jackets, the

Federal Circuit held the apparel not to be sports equipment within 9506.  Id.  The Court

in LeMans clarified the meaning of sports equipment by looking to the Explanatory

Notes:

> In deciding [in Bauer] that merchandise can be sports equipment as long
> as the goods are "useful" or "appropriate" for a sport, we did not address
> the extent to which the Explanatory Notes to Section 9506 clarified the
> meaning of the term "sports equipment," an issue we find persuasive in
> this case, as discussed below.
> . . . .
> [T]he Explanatory Notes to Section 9506 indicate that, to the extent
> "sports equipment" encompasses articles worn by a user, those articles
> are not apparel-like and are almost exclusively protective in nature.  . . .
>  . . . .
> Accordingly, we find that the CIT properly looked to the Explanatory Notes
> to Section 9506 to assist with the interpretation of Heading 9506. The vast
> majority of the examples in those notes are items that a user **would not
> wear on his or her body, but instead consist of articles that are
> entirely separate from the user** (e.g., tennis nets, children's playground
> equipment, archery targets, bobsleds), held by the user in his or her hand

(e.g., golf clubs, tennis rackets, polo mallets, hockey sticks), or are accessories fastened to a user (e.g., snow skis, water skis, ice skates). **The few examples that a user actually would wear, which are identified in Example (13), are almost exclusively used for protection and would complement, or be worn in addition to, apparel worn for a particular sport.**

Id. at 1319-22 (emphasis added). Therefore, the Federal Circuit determined that sports equipment is defined as non-apparel-like merchandise that is necessary, useful, or appropriate for a sport, and if the merchandise is worn by a user, those articles are almost exclusively protective in nature and would complement, or be worn in addition to, apparel worn for a particular sport. Id.; see also Riddell, Inc. v. United States, 37 CIT ___, Slip. Op. 13-37 (Mar. 20, 2013).

It is undisputed that the Tech 8 boot is necessary, useful, or appropriate for the sport of motocross. However, the Federal Circuit explained that sports equipment that is worn by a user must also complement or be in addition to apparel worn for a particular sport. Unlike the examples listed in the Explanatory Notes, Example 13—fencing masks and breast plates, elbow and knee pads, cricket pads, shin-guards—the Tech 8 boot is not worn to complement or be worn in addition to other apparel. See Explanatory Notes, 95.06(B)(13) (2007).[2] Clothing and footwear are the two essential items that people wear, regardless of whether one is dressing for a sport. The Tech 8 boot is exactly that, a boot. It is simply footwear and not an item used to enhance, i.e., "complement or be in addition" to apparel. LeMans, 660 F.3d at 1322. Therefore, it is not sports equipment under Heading 9506, and the court, therefore, does not address

_____

[2] Further citations to the Explanatory Notes are to the relevant provisions of the 2007 edition, which were in effect at the time of the importation of the subject merchandise.

Defendant's arguments under Chapter 95, Note 1(g). Since the Tech 8 is not classified under both Chapter 95 sports equipment and Chapter 64 footwear, the court does not reach Plaintiff's alternative arguments under GRI 3(a).

### B. Chapter 64

Having determined that the Tech 8 is not classifiable under Heading 9506, the court turns to whether it is properly classifiable under footwear headings, 6403 or 6402. Heading 6402 is for "Other footwear with outer soles and uppers of rubber or plastics," while Heading 6403 captures "Footwear with outer soles of rubber, plastic, leather or composition leather and uppers of leather." For purposes of this case, the key difference between these two headings is the material of the footwear's upper: rubber or plastic (Heading 6402), or leather (Heading 6403). Note 4(a) to Chapter 64 explains that "[t]he material of the upper shall be taken to be the constituent material having the greatest external surface area, no account being taken of accessories or reinforcements such as ankle patches, edging, ornamentation, buckles, tabs, eyelet stays or similar attachments." Therefore, the court must determine the material having the "greatest surface area" of the upper of the Tech 8. Note 4(a), Chapter 64, HTSUS.

The Tech 8 upper is made of different components of various materials. In determining the material with the greatest external surface area no account may be given to "accessories or reinforcements." Id. It is therefore important to first identify which components are "accessories or reinforcements" to properly exclude them. Id. At the outset, the parties agree that at a minimum, 43.5% of the upper is rubber or plastic,

and 34.3% is leather.[3]  Def.'s Brief at Ex. L; Def.'s Undisp. Facts ¶¶ 33-34; Pl.'s Resp. to Def.'s Undisp. Facts ¶¶ 33-34.  Therefore, the materials of the remaining components ("the contested components"), comprising 22.2% of the upper's surface area, will determine whether the upper is rubber or plastic, or leather.  The contested components and their respective percent of the upper's surface area are as follows: Listino/calf support (Part No. 41) 12%; rear buckle holder (Part No. 46) 4.7%; buckle receiver holder (Part No. 48) 3.7%; stamped steel heel guard (Part No. 68) 0.9%; butterfly shaped heel counter (Part No. 58) 0.9%.  Def.'s Brief at Ex. L; Def.'s Undisp. Facts ¶¶ 29–34; Pl.'s Resp. to Def.'s Undisp. Facts ¶¶ 29-34.  With the exception of the steel heel guard composed of metal, the other contested components are made of rubber or plastic and are stitched onto the leather upper.  Pl.'s Add'l Undisp. Facts ¶¶ 24, 31, 34, 37, 40. Def.'s Resp. to Pl.'s Undisp. Facts ¶¶ 24, 31, 34, 37, 40.

Plaintiff argues the contested components are "accessories or reinforcements," and therefore should be excluded from the external surface area of the upper.  Pl.'s Br. at 19.  If these components are excluded, the underlying leather would be the "material with the greatest surface area," resulting in classification under Heading 6403.  Note 4(a), Chapter 64, HTSUS.  Defendant, however, argues that the contested components are not accessories or reinforcements and that they should therefore be included in calculating the materials of the surface area.  Def.'s Br. at 19.   With all but one of the

---

[3] Defendant erred in its brief and USCIT Rule 56(h) statement by listing 34.5% of the upper as leather when its cited source, Def.'s Ex. L, provides that 34.3% of the upper is leather.  See Def.'s Br. at 18; Def. Undisp. Facts ¶ 35.  Regardless, two-tenths of a percent is not outcome determinative in this case.

contested components made of plastic or rubber, if the components are not "accessories or reinforcements," then plastic or rubber would constitute the greatest surface area, mandating classification under Heading 6402.

The HTSUS does not define "accessories or reinforcements." Chapter 64, Note 4(a) merely provides that when determining the external surface area of the upper, no account be taken of "accessories or reinforcements such as ankle patches, edging, ornamentation, buckles, tabs, eyelet stays or similar attachments." The Explanatory Notes to Chapter 64 further add, "if the upper consists of two or more materials, classification is determined by the constituent material which has the greatest external surface area, no account being taken of accessories or reinforcements such as ankle patches, protective or ornamental strips or edging, other ornamentation (e.g., tassels, pompons or braids), buckles, tabs, eyelet stays, laces or slide fasteners. The constituent material of any lining has no effect on classification." General Explanatory Note, Chapter 64, HTSUS (emphasis added). Because the phrase "accessories or reinforcements" contains the disjunctive "or," each term, "accessories" and "reinforcements," must be defined.

Plaintiff defines "accessory" as "a component, not essential to the upper, which adds function or ornamentation (beauty)." Pl.'s Br. at 20. Dictionaries define "accessory" as "an object or device that is not essential in itself but that adds to the beauty, convenience, or effectiveness of something else;" or as "something subordinate or supplementary; adjunct." Webster's Third New International Dictionary 11 (2002); The American Heritage Dictionary 71 (2nd College ed. 1985). Plaintiff defines

"reinforcement" as a "material that strengthens or provides additional support."  Pl.'s Br. at 20.  Further, Plaintiff cites to dictionaries that define "reinforcement" as something that reinforces, with "reinforce" defined as "to strengthen or make stronger, as by patching, propping, adding a new material, etc."  Id. (citing Webster's New World Dictionary 1198 (2d College ed. 1986)).  In contrast, Defendant does not define accessory or reinforcement, but instead relies upon the Note 4(a) examples of accessories or reinforcements: patch, edging, ornamentation, buckle, eye stay, and tab. Def. Br. at 14-15.  From these examples, Defendant argues that "accessories and reinforcements within the meaning of Note 4(a) are two categories of shoe components: (1) decorative items; and (2) aids to fastening and closure systems."  Id. at 15. Defendant also contends that "accessories or reinforcements" are generally flimsy and do not contribute more than de minimis strength, support, or durability to the upper."  Id. at 15-16.

After reviewing the respective arguments, the definitions, the examples in Note 4(a), and the Explanatory Notes, the court determines that within Chapter 64 an "accessory" refers to a nonessential article that adds to the aesthetics, convenience, or effectiveness of the footwear, with a "reinforcement" referring to a nonessential article that strengthens, provides additional assistance, or support to the footwear.  Having defined "accessory" and "reinforcement," the court next determines whether the contested components satisfy either of these definitions.

1. Contested Components

a. Listino (Part No. 41)

The Listino (Part No. 41), also called the calf protector, covers 12% of the upper's surface area, and is a plastic strip that is stitched to the leather upper on the back shaft of the Tech 8.  Pl.'s Add'l Undisp. Facts ¶ 24; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 24; Def.'s Undisp. Facts ¶ 33; Pl.'s Resp. to Def.'s Undisp. Facts ¶ 33.  The plastic of the Listino is made of high modulus PU plastic.  The intended functions of the Listino are (1) to securely attach a floating buckle base and a buckle receiver as part of the floating buckle system, (2) to provide a location to place the vertical Alpinestars' logo, and (3) to cover and reinforce the rear zizag seam on the shaft.  Id.  It also protects the vertical zigzag seam from damage.

The floating buckle system is not essential to the Tech 8 because it is not necessary to keep the boot closed as the Velcro® alone keeps it closed.  Pl.'s Add'l Undisp. Facts ¶ 23; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 23.  Therefore, attaching the floating buckle system adds to the convenience of the boot.  Similarly, providing a location for the Alpinestars logo and covering the seam both lend to the aesthetics of the boot.  The Listino is an accessory (which is a nonessential article that adds to the aesthetics, convenience, or effectiveness of the footwear), and is therefore excluded from the upper.[4]  Accordingly, the underlying leather, comprising 12% of the surface

---

[4] Having determined this component to be an accessory, the court does not reach whether it is a reinforcement.

area, is added to the uncontested 34.3% leather, bringing the total to 46.3% leather, and 43.5% plastic or rubber.

b. Rear Buckle Holder (Part No. 46)

The rear buckle holder (Part No. 46) covers 4.7% of the upper's surface area and is stitched onto the leather near the heel of the boot.  Def.'s Undisp. Facts ¶ 30; Pl.'s Resp. to Def.'s Undisp. Facts ¶ 30.  It is made of high modulus PU plastic, and its intended function is to accommodate an adjustable buckle strap, as part of the floating buckle system, so that the strap does not penetrate the inside of the leather upper. Def.'s Undisp. Facts ¶ 10; Pl.'s Resp. to Def.'s Undisp. Facts ¶ 10.  As explained, the floating buckle system is not needed to keep the Tech 8 boot closed.  Pl.'s Add'l Undisp. Facts ¶ 23; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 23.  Based on the rear buckle holder's intended function, it is not essential to the boot.  Instead, it merely supports the adjustable buckle strap as part of the floating buckle system.  Buckles add to the convenience of putting on and securing footwear on one's foot.  Therefore, the rear buckle holder is a nonessential article adding to the convenience of the Tech 8.  It is an accessory.  This conclusion is also supported by Note 4(a), which specifically lists "buckles" as one of the examples for accessories or reinforcements.  Since the rear buckle holder cannot be included within the upper, and it sits on leather, its 4.7% surface area must be designated as leather.  This component increases the total surface area for leather to 51% (46.3% + 4.7%) of the upper.  Since that is more than half of the surface area of the upper, leather is the material with "the greatest surface area," and thus, the material of the upper.

## 2. Heading 6403

Having determined the Tech 8's upper is leather, the court turns to HTSUS Heading 6403, "footwear with . . . uppers of leather."  Plaintiff argues the Tech 8 qualifies as "sports footwear" under subheading 6403.19.40 because it has components that fulfill the requirements of Subheading Note 1 to Chapter 64.  Pl.'s Br. at 35-40.  In the alternative, Plaintiff argues the Tech 8 should be classified under subheading 6403.91.60 as "[f]ootwear with outer soles of rubber, plastics, leather or composition leather and uppers of leather: Other footwear: covering the ankle: Other: Other: For men, youths and boys."  Id. at 1.  Defendant disagrees and argues the Tech 8 cannot be classified under either of those subheadings because the Tech 8's upper is rubber or plastic—not leather.  Def.'s Br. at 27.  Defendant further contends that it is not classifiable under subheading 6403.91.40 because it lacks the necessary components to be considered "sports footwear."  Id.

For footwear to qualify as "sports footwear," Subheading Note 1 to Chapter 64 explains:

> For the purpose of subheadings 6402.12, 6402.19, 6403.12, 6403.19 and 6404.11, the expression "sports footwear" applies only to:
>
> **a) Footwear which is designed for a sporting activity and has, or has provision for the attachment of spikes, sprigs, cleats, stops, clips, bars or the like;**
> b) Skating boots, ski-boots and cross-country ski footwear, snowboard boots, wrestling boots, boxing boots and cycling shoes.

Subheading Note 1, Chapter 64, HTSUS (emphasis added).  As a motocross boot, Tech 8 is not "[s]kating boots, ski-boots and cross-country ski footwear, snowboard boots, wrestling boots, boxing boots and cycling shoes."  Subheading Note 1(b),

Chapter 64, HTSUS.  Therefore, the question is whether the Tech 8 boots are footwear that "has, or has provisions for the attachment of spikes, sprigs, cleats, stops, clips, bars, or the like."  Subheading Note 1(a), Chapter 64, HTSUS.

Plaintiff argues that the Tech 8's hard replaceable sole and steel toe cap are like spikes, sprigs, cleats, stops, clips, and bars.  Pl.'s Br. at 35.  First, the hard replaceable sole is a portion of the sole composed of a hard rubber compound.  Def.'s Undisp. Facts ¶ 26; Pl.'s Resp. to Def.'s Undisp. Facts ¶ 26.  It is located in the middle of the Tech 8 outsole—the portion of the outsole that rests on the footpeg.  Pl.'s Add'l Undisp. Facts ¶ 63; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 63.  A tight grip on the footpeg makes the rider's foot less likely to slip giving the rider a more secure command of the motorcycle.  Pl.'s Add'l Undisp. Facts ¶ 61; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 61.  Plaintiff argues that the hard replaceable sole is like the examples listed in Subheading Note 1(a) because it "helps secure the connection between the Tech 8 and the motorcycle."  Pl.'s Br. at 38.  The court disagrees.  Although the court understands Plaintiff's argument, it is a stretch to equate spikes, sprigs, cleats, stops, and bars with a harder portion of a sole.  None of the examples in Subheading Note 1(a) are distinguished from the sole by simply being composed of a harder composition of the same material.  Many forms of footwear possess soles that contain portions with harder rubber than the remainder of the sole, and soles may be replaced.  This is not enough to make footwear "sports footwear" under Subheading 6403.19.

Next, Plaintiff argues that the steel toe cap is also like the examples in Subheading Note 1(a).  Plaintiff argues that the steel toe cap "helps provide an element

of non-toe drag resistance to aid the rider's performance."  Pl.'s Br. at 40.  Defendant, however, argues that "the primary purpose of the [steel] toe cap is to prevent the sole of the shoe from separating.  In other words, the primary function is to enhance the durability of the boot."  Def.'s Br. at 31 (original emphasis).  The steel toe cap is located where the outsole and the upper of the Tech 8 join, and is wrapped around the outsole of the boot.  Pl.'s Add'l Undisp. Facts ¶ 49; Def.'s Resp. to Pl.'s Undisp. Facts ¶ 49.  The flat metal surface of the steel toe cap, that faces the ground, is smooth.  Id.  Although a flat metal surface would reduce friction in comparison to rubber, this is not enough to make it similar to the examples of Subheading Note 1(a).  Plaintiff contends that "the steel toe cap, which is a slightly protruding attachment to the bottom of the Tech 8 outsole, has a function related to traction and in that way is like the other attachments in Chapter 64 Subheading Note 1(a)."  Pl.'s Br. at 40.  Having a "function related to traction" alone does not make it like spikes, sprigs, cleats, stops, clips, bars.  Moreover, the location of the steel toe cap, joining the upper and the outsole of the boot, does lend support to Defendant's contention that its primary purpose is to prevent the sole from separating from the upper. Therefore, the steel toe cap is also unlike the examples of Subheading Note 1(a).  The Tech 8 boot is accordingly not "sports footwear" and cannot be classified under HTSUS subheading 6403.19.40.

Finally, the court turns to whether the Tech 8 is properly classified under 6403.91.60 as "[f]ootwear with outer soles of rubber, plastics, leather or composition leather and uppers of leather: Other footwear: Covering the ankle: Other: Other: For men, youths and boys."  Having already determined the upper is leather, there is no

dispute that the Tech 8 covers the ankle, and is for men, youths, and boys. The Tech 8 boot is therefore prima facie classifiable under HTSUS subheading 6403.91.60, which carries an 8.5% duty rate.

### 3. Headquarters Ruling HQ H015088

Last, Defendant argued that Customs' Headquarters Ruling, HQ H015088 (Oct. 29, 2007), is entitled to deference and that "Customs' decisions are entitled to a statutory presumption of correctness." Def.'s Br. at 10. First, because this case is on summary judgment, the presumption of correctness is not relevant as it attaches to evidentiary matters. See Universal Elecs. v. United States, 112 F.3d 488, 492 (Fed. Cir. 1997) ("The presumption of correctness certainly carries force on any factual components of a classification decision . . . . The situation is quite different, however, with respect to pure questions of law, such as the proper interpretation of a particular tariff provision or term."); Goodman Mfg., LP v. United States, 69 F.3d 505, 508 (Fed. Cir. 1995) ("Because there was no factual dispute between the parties, the presumption of correctness is not relevant."). The court also disagrees that Customs Ruling HQ H015088 is entitled to deference. Customs' ruling is entitled to deference proportional to its "power to persuade." Mead, 533 U.S. 218, 235; Skidmore, 323 U.S. 134, 140. Ruling HQ H015088 is not persuasive.

In HQ H015088, Customs classified the Tech 8 boot under Heading 6402 for footwear with uppers of rubber or plastic. Instead of first determining whether the components were accessories or reinforcements, Customs focused on whether they were part of the external surface area of the upper ("ESAU"). Customs found those

components to be part of the ESAU, and therefore, not accessories or reinforcements. Customs applied the following factors in assessing whether the contested components were part of the ESAU: "(a) [t]he external plastic material was lasted under and attached to the foot bed; (b) [t]he external layer of plastics covered the majority of the outer surface of the upper, (c) [c]omponents made from plastics were not similar to examples of accessories or reinforcements cited in note 4(a); and (d) [t]he external layer of plastics contributed to the structural strength of the sandal and provided support of the foot." HQ H015088. In applying the factors, Customs found the components were part of the ESAU, and therefore, not accessories or reinforcements. Customs accordingly determined that the Tech 8 had a rubber or plastic upper. Id.

Determining whether certain components constitute the ESAU is not necessarily the same as determining whether the contested components are accessories or reinforcements. First, certain Chapter 64 subheadings specifically include Note 4(a)'s "accessories or reinforcements" within the ESAU. See HTSUS 6402.19.05 ("Other footwear with outer soles and uppers of rubber or plastics: Sports footwear: Other: Having uppers of which 90% of the external surface area (including any accessories or reinforcements such as those mentioned in note 4(a) of this chapter) is rubber or plastic . . . " (emphasis added)); Carrini, Inc. v. United States, 25 CIT 857, 859 (2001) (classification of women's shoes under a Chapter 64 subheading that included Note 4(a)'s accessories or reinforcements within the ESAU). In this case, however, Customs determined ESAU with four factors, one of which—factor (c)—excluded accessories or reinforcements. This factor states that the "components made from plastic were not

similar to examples of accessories or reinforcements cited in note 4(a)." However, it does not define accessories or reinforcements, nor does it provide a means to analyze whether components are accessories or reinforcements. For these reasons, Customs' determination of ESAU cannot serve as the proper basis for deciding whether components are accessories or reinforcements.

HQ H015088 provides no analysis on the meaning of accessories or reinforcements, and is therefore, not persuasive. Accordingly, the ruling does not warrant deference.

### III. Conclusion

Alpinestars' Tech 8 boots are properly classified under HTSUS subheading, 6403.91.60. The court will therefore enter judgment denying Defendant's motion for summary judgment, and granting Plaintiff's motion for summary judgment.


                                                            /s/ Leo M. Gordon
                                                         Judge Leo M. Gordon


Dated:   August 02, 2013
         New York, New York